```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------ X
                                                       :
  RODNEY DAVID,                                        :
                                                       :
                              Petitioner,              :
                                                       :      10 Civ. 5541 (KPF) (FM)
                    v.                                 :
                                                       :      OPINION AND ORDER
  WILLIAM BROWN, SUPERINTENDENT,                       :      ADOPTING REPORT AND
                                                       :       RECOMMENDATION
                              Respondent.              :
                                                       :
------------------------------------------------------ X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 9, 2014

KATHERINE POLK FAILLA, District Judge:

Petitioner Rodney David ("Petitioner"), who is proceeding *pro se* and is currently incarcerated, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition") on July 21, 2010, against Superintendent William Brown of the Eastern Correctional Facility in Napanoch, New York. In it, Petitioner seeks review of his New York State Supreme Court conviction for Criminal Possession of a Weapon in the Third Degree, in violation of New York Penal Law § 265.02(4). United States Magistrate Judge Frank Maas issued a Report and Recommendation dated January 7, 2014 (the "Report"), recommending that the Petition be denied. The Court has examined both the Report and Petitioner's January 28, 2014 Objection to that Report (the "Objection" or "Obj."), and finds that the Report should be adopted in full. Accordingly, the Petition is denied.

## BACKGROUND

The facts and procedural history of the instant action are set forth in the Report. (*See* Dkt. #29). Nonetheless, a brief summary of the relevant facts is useful to this Court's analysis.

Petitioner was arrested on November 9, 2003, and charged with one count of Criminal Possession of a Weapon in the Second Degree, in violation of New York Penal Law § 265.03(2), and one count of Criminal Possession of a Weapon in the Third Degree, in violation of New York Penal Law § 265.02(4). (Report 2-4; Respondent's Opposition 2 (Dkt. #23)).

The prosecution's evidence at trial revealed that the New York City Police Department (the "NYPD") received a "911" call on November 9, 2003, in which the caller reported a man with a gun on St. Nicholas Avenue in upper Manhattan; police responded to the scene and saw Petitioner walking down the street. (Report 3-4). Petitioner then began running from the police. (*Id.*). A livery cab driver, who was permitted to testify using a pseudonym at trial,[1] saw Petitioner throw something behind a fence as Petitioner ran from the police. (*Id.*). Thereafter, Petitioner was apprehended; after searching the area identified by the livery cab driver, the officers located a handgun and several rounds of ammunition. (*Id.*). On July 15, 2005, after a jury trial, Petitioner

---

[1] The state trial court granted the People's *ex parte* motion for a protective order, holding that the courtroom would be closed to the public, but not to members of Petitioner's family, during any testimony from the 911 caller or the livery cab driver. (Report 5). When the matter was assigned to another judge, the People renewed their motion, and the court appears to have granted that motion from the bench, though there is no transcript of that decision available today. (*Id.* at 6).

was found guilty of Criminal Possession of a Weapon in the Third Degree. (Report 7).

Thereafter the People moved, pursuant to New York Criminal Procedure Law § 440.20, to have Petitioner adjudicated a discretionary persistent felony offender ("PFO"), and recommended the minimum statutory sentence of 15 years' to life imprisonment. (Report 7). On September 19, 2005, Petitioner was adjudicated a PFO and sentenced to an indeterminate term of 17 years' to life imprisonment. (*Id.*).

The Appellate Division unanimously affirmed Petitioner's conviction on February 9, 2010. *People* v. *David*, 894 N.Y.S.2d 406 (1st Dep't 2010). Petitioner was denied leave to appeal to the New York Court of Appeals by decision dated May 26, 2010. *People* v. *David*, 14 N.Y.3d 887 (2010).

## THE STANDARD OF REVIEW

A court may accept, reject, or modify, in whole or in part, the findings or recommendations made by a magistrate judge. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Grassia* v. *Scully*, 892 F.2d 16, 19 (2d Cir. 1989). A court may accept those portions of a report to which no "specific, written objection is made," as long as the factual and legal bases supporting the findings are not clearly erroneous. *See Greene* v. *WCI Holdings Corp.*, 956 F. Supp. 509, 513 (S.D.N.Y. 1997) (quoting Fed. R. Civ. P. 72(b)); *see also Thomas* v. *Arn*, 474 U.S. 140, 149 (1985). A magistrate judge's decision is clearly erroneous only if the district court is "left with the definite and firm conviction that a mistake has

been committed." *Easley* v. *Cromartie*, 532 U.S. 234, 235, 242 (2001) (quoting *United States* v. *U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

To the extent that a petitioner makes specific objections to a magistrate judge's findings, the reviewing court must undertake a *de novo* review of the objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *United States* v. *Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). *Pro se* filings are read liberally and interpreted "to raise the strongest arguments that they suggest." *Pabon* v. *Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (internal quotation marks and citation omitted). However, where objections are "conclusory or general," or where the petitioner "simply reiterates his original arguments," the report should be reviewed only for clear error. *Walker* v. *Vaughan*, 216 F. Supp. 2d 290, 292 (S.D.N.Y. 2002) (internal quotation marks and citation omitted).

## DISCUSSION

### A.  Petitioner's Grounds for Habeas Relief

Petitioner raises five grounds for habeas relief, namely, that (i) he was denied his Sixth and Fourteenth Amendment rights to a public trial because the courtroom was closed during the testimony of a witness who was permitted to testify under a pseudonym; (ii) he was denied his Fourteenth Amendment due process right to a fair trial because the prosecutor made allegedly improper remarks during summation; (iii) the trial court violated his Fourteenth Amendment due process rights by failing to consider his history and character when sentencing him as a PFO, on the basis that the PFO statutory scheme was unconstitutional, and that his sentence itself was unconstitutional; (iv) he

was denied his Sixth Amendment right to confront an NYPD forensics expert at his trial; and (v) he received ineffective assistance of counsel in violation of the Sixth Amendment, because his attorney failed to raise his Confrontation Clause claim on appeal. (*See* Report 2 (citing Amended Petition ¶¶ 12(A), (B), (C), (D), (E) (Dkt. #18))).

**B.     The Report**

Judge Maas thoroughly considered and rejected each of Petitioner's grounds for relief. Specifically, Judge Maas found that Petitioner's first, third (to the extent he challenged the PFO statutory scheme), and fourth grounds for relief were procedurally defaulted and thus improperly before this Court, due to Petitioner's failure to exhaust those claims. (*See* Report 15-19). Thus, the only claims properly raised before this Court were Petitioner's second claim, related to the prosecutor's summation; his third claim, related to the constitutionality of his PFO sentence; and his fifth claim, related to the assistance of counsel he received on appeal. (*Id.* at 19).

First, Judge Maas determined that Petitioner had failed to demonstrate that the prosecutor's summation caused him "actual prejudice." (Report 20-25 (internal citations omitted)). Second, Judge Maas found that there was "nothing improper" about Petitioner's sentence, given his "lengthy criminal history and refusal to take responsibility for his actions." (*Id.* at 27). Third, Judge Maas held that Petitioner had failed to demonstrate that his appellate counsel had been ineffective. (*Id.* at 28-29). Specifically, Judge Maas rejected Petitioner's argument that his appellate counsel should have raised his

5

Confrontation Clause argument based upon the Supreme Court's 2011 decision in *Bullcoming* v. *New Mexico*, 131 S. Ct. 2705 (2011), in which the Court held that "surrogate testimony" of an analyst who did not himself analyze a forensic sample violated the Sixth Amendment's Confrontation Clause. (Report 28-29). Judge Maas noted that at the time Petitioner's appeal was pending and decided in 2010, the controlling precedent was *Melendez-Diaz* v. *Mass.*, 557 U.S. 305 (2009), which did not explicitly foreclose the possibility of "surrogate" testimony such as that presented in Petitioner's case, particularly with respect to "business and public records." (*Id.*). Put simply, Judge Maas found that because Petitioner's appeal was decided before *Bullcoming*, his counsel's failure to raise *Bullcoming*, or the arguments implicated by that decision, did not constitute ineffective assistance of counsel. (*Id.* at 29-34).

Petitioner challenges Judge Maas's determinations as to each of the five grounds for relief, yet does so by largely reiterating the same arguments raised before, and rejected by, Judge Maas. Where appropriate, the Court has reviewed Petitioner's claims *de novo* and finds no error in Judge Maas's careful and thorough decision.

**C.   Review of Petitioner's Claims**

    **1.   Public Trial Claim**

Several of Petitioner's objections center upon the merits of his courtroom closure claim. Relying upon the Supreme Court's decision in *Waller* v. *Georgia*, 467 U.S. 39, 48 (1984), he argues that a trial court must "make findings

adequate to support [a courtroom closure], so that a reviewing court can determine if the closure was warranted." (Obj. 2 (internal alterations omitted)).

Judge Maas correctly determined that this Court lacks jurisdiction to consider this claim on the merits because Petitioner procedurally defaulted on this claim. (Report 15 (collecting cases)). In point of fact, Petitioner's counsel consented to the closure order (*id.*), which distinguishes the instant case from *Waller*, and renders the issue procedurally barred and waived on appeal. *See Waller*, 467 U.S. at 41-42 (considering the constitutionality of a courtroom closure over defense objections). Petitioner raises only a perfunctory, unsupported objection with respect to the procedural bar, writing "Petitioner objects to the Hon. Frank Maas's determination that petitioner should be procedurally barred on this issue," and instead reiterating his (failed) arguments on the merits. (Obj. 2-3). Petitioner's conclusory objections here are insufficient to preserve the matter for *de novo* review. *See Walker*, 216 F. Supp. 2d at 292. The Court has accordingly reviewed the Report for clear error in this regard and finds none.

### 2. Improper Summation Claim

A claim of prosecutorial misconduct during summation requires a court to consider "whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden* v. *Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly* v. *DeChristoforo*, 416 U.S. 637, 643 (1974)). Moreover, a habeas petitioner must

demonstrate that the prosecutorial misconduct caused him actual prejudice. *Id.*

Petitioner concedes that he can make only a "basic objection to this claim being denied on the merits." (Obj. 3). Again, owing to Petitioner's conclusory objection, the Court has reviewed the Report for clear error with respect to this claim and finds none. Judge Maas's decision is carefully reasoned and well-supported, and makes plain that Petitioner failed to demonstrate that he suffered any actual prejudice as a result of the allegedly inappropriate comments. (Report 20-23). In fact, Judge Maas correctly found that the prosecutor's comments with respect to witness vouching and other testimonial matters were not obviously inappropriate and, moreover, that any problems occasioned by the comments were addressed by the trial court's jury instructions. This claim fails to assert a ground for habeas relief.

### 3. PFO Sentence Claim

Petitioner contends that Judge Maas seems to be "under the impression" that he is challenging the statute codified at New York Penal Law § 70.10. (Obj. 3).[2] Instead, Petitioner asserts a challenge to the "procedure in which the

---

[2] The Second Circuit has described the interplay between these two statutes as follows:

> Section 70.10, which applies to the defendants in this case, provides that "a person, other than a persistent violent felony offender ..., who stands convicted of a felony after having previously been convicted of two or more felonies" is a "persistent felony offender" (subject to certain qualifications relating primarily to the nature of the prior offenses, the sentences the defendant received for them, and whether imprisonment for the prior offenses began prior to the commission of the present offense). If the sentencing court "is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time

8

petitioner was sentenced under N.Y. [Crim. Proc. Law] § 400.20 just like in any penalty phase, prior to the imposition of a sentence there are certain procedures that must be followed or as to render the sentence invalid." (*Id.*). In this regard, Petitioner contends that the trial court failed to satisfy both prongs of § 400.20 in sentencing him. (*Id.*).

Judge Maas properly determined that Petitioner's statutory claim was procedurally defaulted. (*See* Report 15-16, 25). Thus, this Court has no jurisdiction to entertain Petitioner's claim that the trial court failed to follow the proper statutory procedure; Petitioner's objections fail to address this issue, and simply reassert his arguments on the merits of this claim. (*See* Obj. 3). Accordingly, the Court has reviewed the Report for clear error and finds none in this respect.

Petitioner's remaining challenge is that the trial court failed to consider his history and character in adjudicating him a PFO. (Obj. 3). However, the Second Circuit, relying on the New York Court of Appeals' decision in *People* v. *Rivera*, 5 N.Y.3d 61 (2005), has determined that New York Penal Law § 70.10 permits a judge to impose a sentence of 15 years to life "based on the

---

supervision will best serve the public interest," *id.* § 70.10(2), such an offender may be sentenced for the new felony offense as if it were a Class A-I felony, notwithstanding the statutory penalty ordinarily provided for the crime committed. Determinations under this section are made after a hearing conducted under N.Y. Criminal Procedure Law § 400.20. For Class A-I felonies, New York law imposes an indeterminate sentence with a mandatory minimum of fifteen or twenty-five years, and a maximum of life imprisonment. *See* N.Y. Penal Law § 70.00(2)(a), (3)(a)(i).

*Brown* v. *Greiner*, 409 F.3d 523, 526-27 (2d Cir. 2005).

defendant's predicate felony convictions alone." *Portalatin* v. *Graham*, 624 F.3d 69, 88 (2d Cir. 2010) (en banc), *cert. denied*, 131 S. Ct. 1693 (2011). In fact, Petitioner's sentence was affirmed by the Appellate Division based in large measure on *Rivera*. *See David*, 894 N.Y.S.2d at 407. Moreover, as Judge Maas noted in the Report, the trial court *did* consider Petitioner's history and character in deciding his ultimate sentence. (*See* Report 26-27 (internal citations omitted)). The Court's *de novo* review of this claim reveals that Petitioner has failed to demonstrate that his sentence was unconstitutional.

    4.    **Confrontation Clause Claim**

Judge Maas determined that because Petitioner failed to assert his Confrontation Clause claim on appeal in state court, he has failed to exhaust this claim and it may only be reviewed by this Court to the extent that his counsel's failure to raise that claim was so deficient that it violated the Petitioner's constitutional rights. (Report 18-19 (citing, *inter alia*, *Edwards* v. *Carpenter*, 529 U.S. 446, 451 (2006))). Petitioner objects to Judge Maas's determination in this regard by reiterating the merits of his Confrontation Clause claim. As he does not contest a specific finding in the Report, the Court has reviewed this claim for clear error and finds none. *See Mario* v. *P & C Food Mkts.*, 313 F.3d 758, 766 (2d Cir. 2002).

In addition, for the reasons discussed in the next section, the Court's *de novo* review of Petitioner's ineffectiveness claim reveals that Petitioner was provided with constitutionally effective counsel on appeal. For this reason as well, Petitioner's Confrontation Clause claim fails.

### 5. Ineffective Assistance of Counsel Claim

A petitioner alleging ineffective assistance of appellate counsel must prove both that appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and that absent counsel's deficient performance in omitting certain claims or failing to adequately argue claims that were raised, there is a reasonable probability that the petitioner's appeal would have been successful. *Mayo* v. *Henderson,* 13 F.3d 528 (2d Cir. 1994). In the Report, Judge Maas rejected Petitioner's argument that appellate counsel's failure to raise his Confrontation Clause claim on appeal constituted ineffectiveness, reasoning that to the extent his claim was based upon *Bullcoming*, that case was not the law at the time Petitioner's appeal was pending. (Report 27-33). Petitioner protests that *Bullcoming* did apply to his case, because *Bullcoming* was "not yet finalized" (presumably, because it was at that time pending before the Supreme Court of New Mexico) at the time his own appeal was pending before the Appellate Division. (Obj. 3-5). Though Petitioner recognizes that *Bullcoming* was rendered more than a year after the decision on his own appeal, he nonetheless persists that *Bullcoming* applies. (*Id.*).

As the Report noted, counsel's performance must be judged "on the facts of the particular case, viewed as of the time of counsel's conduct." (Report 30 (quoting *Strickland* v. *Washington,* 466 U.S. 688, 690 (1984)); *see also id.* ("In deciding which claims to press on appeal, '[c]ounsel is not required to forecast changes in the governing law.'" (quoting *Mayo,* 13 F.3d at 533)). Plainly, at the

11

time Petitioner appealed, *Bullcoming* was not the law; *Melendez-Diaz* was, and many courts had concluded under that precedent that surrogate witnesses could testify to laboratory results contained in a report prepared solely for trial. (Report 30 (collecting cases)). On that basis, Petitioner's appellate counsel reasonably elected not to pursue "what would have been [at that time] a speculative constitutional claim." (*Id.* at 31). *See Smith* v. *Murray*, 477 U.S. 527, 536 (1986) ("This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." (internal citation omitted)). On this basis, the Report properly determined that appellate counsel provided effective assistance of counsel on appeal.

Petitioner further claimed ineffectiveness based on his appellate counsel's failure to request oral argument or submit a reply brief. (Report 33). Judge Maas determined that Petitioner had failed to set forth any facts indicating that the outcome of his appeal would have been different had his counsel taken either of those steps; on that basis, Petitioner had failed to establish that he suffered any prejudice. (*Id.*). Petitioner now reasserts this argument, objecting that his appellate counsel's failure to submit a reply brief deprived counsel of the opportunity to correct "claims and statements not supported by the record" in the People's opposition brief. (Obj. 5-6). Specifically, Petitioner asserts that the Assistant District Attorney assigned to his prosecution "committed perjury" when he told the trial judge of a previous judge's decision to close the courtroom and permit the use of a pseudonym

12

during an eyewitness's testimony. (*Id.*). Petitioner premises his accusation of perjury on the sole fact that the Assistant District Attorney ("ADA") retained no copies of the trial court's decisions with respect to courtroom closure and the use of a pseudonym. (*Id.*).

Petitioner's allegations are completely unsupported, and are indeed undermined, by the record.[3] To be sure, the record lacks the minutes from the proceeding in which the state court issued its decision. (Report 6; Petitioner's Brief 2, n.2 (Ex. A)). This does not mean, however, that the court never issued the decision in the first place, or that the prosecutor lied about the existence of such an order. Notably, Petitioner's trial counsel did not object to either of these decisions (thereby failing to preserve the issue), which further undermines Petitioner's argument that those decisions were never issued. (*See* Dkt. #22 at 147-48).

More importantly, Petitioner has failed to establish that he suffered any prejudice as a result of his appellate counsel's decisions not to request oral argument or submit a reply brief. "'[T]he failure of counsel to appear at oral argument or to file a reply brief is not so essential to the fundamental fairness of the appellate process as to warrant application of a per se rule of prejudice.'" (Report 33 (quoting *United States* v. *Birtle*, 792 F.2d 846, 847-48 (9th Cir. 1986))). Judge Maas's conclusion is particularly appropriate in light of the fact

---

[3]  Petitioner's submitted evidence undercuts rather than bolsters this claim. Petitioner submitted an unverified and unsubstantiated e-mail chain purporting to be between his appellate counsel and the ADA assigned to his case. In that e-mail chain, the ADA notes (more than five years after trial) his belief that there was no written order with respect to the closure and pseudonym issues. (Obj. 8-9).

13

that the Appellate Division determined that David's trial counsel had failed to preserve the courtroom closure or pseudonym claims by consenting and failing to object to them at trial; thus, appellate counsel could not have raised either issue successfully on appeal, and Petitioner cannot now demonstrate that he would have suffered prejudice as a result.  *See David*, 894 N.Y.S.2d at 452 (noting that David's public trial claim was both procedurally defaulted and deficient on the merits).  The Report properly determined that Petitioner was provided with effective counsel on appeal, and his claim thus fails to state a ground for relief.

## CONCLUSION

For the foregoing reasons, the Report is adopted in full, and the Petition is DENIED.  The Clerk of Court is directed to mark the case as closed.

Since Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.  *See* 28 U.S.C. § 2253(c).  Pursuant to 28 U.S.C. § 1915(a)(3), any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal.  *Coppedge* v. *United States,* 369 U.S. 438, 444-45 (1962).  The Clerk of Court shall dismiss the Petition and close the case.

SO ORDERED.

Dated: September 9, 2014
       New York, New York

*A copy of this Order was mailed by Chambers to:*
  Rodney David
  05-A-5004
  Eastern Correctional Facility
  P.O. Box 338
  Napanoch, NY 12458

KATHERINE POLK FAILLA
United States District Judge

14